**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**
------------------------------------------------------- X
                                              :
HYUNMI SON,                                   :
                                              :
                          Plaintiff,          :
                                              :          **OPINION AND ORDER**
          - against -                         :
                                              :          **11 Civ. 2315 (SAS)**
REINA BIJOUX, INC., BIJOUX                     :
WORLD, INC., JIEUN YOUN, INHEE                 :
PARK and SUNG MIN KIM,                        :
                                              :
                          Defendants.         :
------------------------------------------------------- X



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

Hyunmi Son ("Son") brings suit against her former employer, Reina

Bijoux, Inc., Bijoux World, Inc., Jien Youn, Inhee Park and Sung Min Kim

(collectively, "Defendants") alleging discrimination on the basis of race and

unlawful retaliation in violation of section 1981 of Title 42 of the United States

Code, the New York City Human Rights Law, the Fair Labor Standards Act

("FLSA"), and the New York Labor Law.  Son alleges that her statutory rights

were violated as a result of racial discrimination and retaliatory discharge arising

out of her employment.  Additionally, Son alleges that the defendants owe her for

unpaid overtime and liquidated damages under the FLSA.

1

Defendants now move to dismiss Son's first cause of action, for racially discriminatory conduct in violation of section 1981, and Son's third cause of action, for retaliation in violation of the FLSA.  For the following reasons, defendants' motion to dismiss is granted.

## II.   BACKGROUND[1]

Son, a Korean-born female, is a former employee of the defendants.[2] She was hired in August 2010 to serve as a book-keeper and in-house bill collector for the defendants' jewelry business.[3]  Defendants are Korean-born residents of the United States.[4]  Son alleges that "despite Plaintiff's unblemished work history during the time she was employed by Defendants, Defendants came to view Plaintiff negatively due to her unwillingness to conform to Defendants' stereotypes about Koreans and their actual or alleged willingness to provide their employers the 'courtesy' of additional work without being paid."[5]  Son alleges that the defendants "were so comfortable exploiting Koreans . . . that they required their

---

[1]     The following facts are drawn from the Complaint ("Compl.") and are presumed to be true for the purposes of this motion.

[2]     *See* Compl. ¶ 39.

[3]     *See id.*

[4]     *See id.* ¶ 49.

[5]     *Id.* ¶ 81.

Korean employees to work overtime without compensation even more often than they required their Hispanic employees . . . to work overtime without compensation."[6]

When Son began her employment, she was to receive $400 per week, or $10 per hour for a 40-hour work week.[7]  In October 2010, she began to receive $500 per week, or $12.50 per hour.[8]  Throughout her employment, Son was expected to work a substantial amount of overtime, for which she was not compensated.[9]  By January 2011, Son was working approximately 12.5 hours of overtime per week without compensation.[10]  On January 25, 2011, Sung Min Kim, the store's manager, informed Son that in addition to these 12.5 uncompensated hours per week, she would from then on be required to work Saturdays without additional compensation.[11]  When Son protested, Kim informed her that she would be terminated if she insisted on being compensated for working overtime.[12]  During

---

[6]    *Id.* ¶ 52.

[7]    *See id.* ¶ 40.

[8]    *See id.*

[9]    *See id.* ¶¶ 41-44.

[10]    *See id.* ¶ 42.

[11]    *See id.* ¶ 54.

[12]    *See id.* ¶ 55.

3

this conversation, Kim intimated that "even though overtime may be paid by other employers, the non-payment of overtime is something Koreans understand and accept."[13]

The next day, January 26, 2011, Son met with both Kim and Jien Youn, the store's owner and General Manager.[14]  She recorded each of these conversations with her cellular phone.[15]  Son later had these conversations translated from Korean to English and transcribed by an independent certified translation service.[16]  When Son asked Kim why she was required to work on Saturdays without pay, Kim stated, "[T]hat is why we work with Koreans. . . . Koreans understand each [sic] about this kind of courtesy."[17]  When Son asked Youn the same question, she stated, "That is why we hire Koreans. . . .  [R]egular hours are Monday through Friday, but when busy, employees should come to work to prepare a show.  There is no additional pay."[18]  During the course of these

---

[13]     *Id.*

[14]     *See id.* ¶¶ 57-61.

[15]     *See id.* ¶ 57.

[16]     *See id.* ¶ 58.

[17]     *Id.* ¶ 59; *see also* Certified Translation at 2-3, Ex. A to Compl.

[18]     Compl. ¶ 62; *see also* Certified Translation at 5, Ex. A to Compl.

4

meetings, Youn and Kim terminated Son's employment.[19]  Youn then refused to allow Son to work through the week and informed her that she was required to leave that day.[20]

## III.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal.*[21] First, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[22] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[23]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for

---

[19]     *See* Compl. ¶ 64.

[20]     *See id.*

[21]     129 S. Ct. 1937, 1950 (2009).

[22]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[23]     *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

relief."[24]  To survive a Rule 12(b)(6) motion to dismiss, the allegations in the

complaint must meet a standard of "plausibility."[25]  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[26]

Plausibility "is not akin to a probability requirement;" rather, plausibility requires

"more than a sheer possibility that a defendant has acted unlawfully."[27]

 "In considering a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint."[28]  However, the court may also

consider a document that is not incorporated by reference, "where the complaint

'relies heavily upon its terms and effect,' thereby rendering the document 'integral'

---

[24] *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[25] *Twombly*, 550 U.S. at 564.

[26] *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[27] *Id.* (quotation marks omitted).

[28] *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

to the complaint."[29]

      With respect to employment discrimination cases, a plaintiff is not required to make a prima facie case at the pleading stage.[30]  However, "the claims must be facially plausible" to survive a motion to dismiss.[31]  The court "considers the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint which, if true, gives [d]efendant fair notice of [p]laintiff's employment discrimination claims and the grounds on which such claims rest."[32]

## IV.  APPLICABLE LAW

### A.  Employment Discrimination Based on Race in Violation of Section 1981

      Section One of the Civil Rights Act of 1886 – colloquially known as

---

[29]    *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[30]    *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *Braphman-Bines v. New York City Police Dep't*, No. 03 Civ. 10207, 2005 WL 22843, at *3 (S.D.N.Y. Jan. 3, 2005) ("Whether [plaintiff] has, or ultimately can, fulfill the requirements of the *McDonnell Douglas* test, however, is not the proper inquiry at [the pleading] stage in the litigation.") (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[31]    *Mabry v. Neighborhood Defender Serv.,* 769 F. Supp. 2d 381, 390 (S.D.N.Y. Jan. 31, 2011).

[32]    *Maysonet v. Citi Group, Inc.*, No. 10 Civ. 4616, 2011 WL 476610, at *3 (S.D.N.Y. Feb. 9, 2011) (quotation marks and citations omitted).

Section 1981 – states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.[33]

"Only suits based on racial discrimination may be maintained under this statute.[34]

Employment discrimination claims brought under section 1981 are generally analyzed under the same evidentiary framework that applies to Title VII and Age Discrimination in Employment Act claims.[35]  In order to state a prima facie case of race discrimination, a plaintiff must show that: (1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give

---

[33]   42 U.S.C. § 1981(a).

[34]   *Lee v. Bolger*, 454 F. Supp. 226, 233 (S.D.N.Y. 1978).  *Accord Mian v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam) ("To establish a claim under § 1981, a plaintiff must allege . . . [that] the plaintiff is a member of a racial minority [and] an intent to discriminate on the basis of race by the defendant . . . .").

[35]   *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009); *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225-27 (2d Cir. 2004) (applying Title VII hostile work environment analysis to a hostile work environment claim under section 1981); *Lu v. Chase Inv. Servs. Corp.*, No. 07 Civ. 1256, 2009 WL 4670922, at *6-7 (S.D.N.Y. Dec. 9, 2009) (claims for racial discrimination under Section 1981 and New York law are analyzed under the same framework as Title VII claims).

rise to an inference of discrimination based on her membership in the protected

class.[36]  The last element may be established, for example, by showing that a

similarly situated person not in the protected class was treated more favorably than

the plaintiff.[37]

### B.    FLSA Retaliation

The FLSA provides that it is "unlawful for any person to discharge or

in any other manner discriminate against any employee because such employee has

filed any complaint or instituted or caused to be instituted any proceeding under

[the FLSA] . . . ."[38]  In order to establish a prima facie case of retaliation in

violation of the FLSA, a plaintiff must show "1) participation in protected activity

known to the defendant; 2) an employment action disadvantaging the defendant;

and 3) a causal connection between the protected activity and the adverse

employment action."[39]  Once a plaintiff establishes a prima facie case, "the

defendant has a burden of production 'to articulate some legitimate, [non-

---

[36]     *See Leibowitz,* 584 F.3d at 498; *Lu,* 2009 WL 4670922, at *2.

[37]     *See Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir. 1997).

[38]     29 U.S.C. § 215(a)(3).

[39]     *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (quoting
*Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)).

retaliatory] reason' for the adverse action."[40]

The Second Circuit has held that only the filing of formal complaints to a government authority is protected under the FLSA.[41]  Informal complaints made directly to employers does not constitute protected activity.[42]

## V.   DISCUSSION

### A.   Son's Section 1981 Claim Is Dismissed

Defendants move to dismiss Son's section 1981 claim on the grounds that the allegations in Son's complaint make out a claim for national origin discrimination, a form of discrimination which is not proscribed under section 1981.[43]  Defendants allege that Korean should be defined as a national origin rather

---

[40]     *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988) (quoting *McDonnell Douglas*, 411 U.S. at 802).

[41]     *See Lambert v. Genessee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics*, 131 S. Ct. 1325 (2011).

[42]     *See Lambert*, 10 F.3d at 55.

[43]     *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin." (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987))); *see also The Homeless Patrol v. Joseph Volpe Family*, No. 09 Civ. 3628, 2010 WL 2899099, at *12 n.11 (S.D.N.Y. June 29, 2010) ("Section 1981 does not cover claims based on national origin."), *report & rec. adopted*, 2010 WL 2899076 (S.D.N.Y. July 22, 2010).

than a race,[44] while Son argues the reverse.[45]

However, a close reading of Son's complaint reveals that she was not in fact terminated based on either race or national origin.  Son's employment was terminated based on her failure to conform to her employers' expectations.  That these expectations were based on stereotypes does not make out a claim under section 1981.  For example, Son's complaint includes an acknowledgment that her termination was based on her insistence on being paid for overtime.[46]  Son further alleges that defendants expected Son to demonstrate a willingness to work overtime without compensation.[47]  While these expectations may be rooted in discriminatory stereotypes, termination of Son's employment based on the failure to live up to such stereotypes does not constitute unlawful discrimination in violation of section 1981.  Defendants' statement that "[t]hat is why we hire Koreans" indicates not that Son suffered an adverse employment action as a consequence of being Korean, but that she was hired because of defendants'

---

[44]     *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 4.

[45]     *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Mem.") at 2-3.

[46]     *See* Compl. ¶ 55.

[47]     *See id.* ¶ 61.

stereotypes about Koreans.[48]  Whether or not Korean constitutes a race or a national origin, Son's termination was not based on being Korean but based on her failure to work overtime without compensation.  For this reason, the defendants' motion to dismiss the plaintiff's section 1981 claim is granted.

### B.    Son's Claim for Retaliation in Violation of the FLSA Is Dismissed

Defendants argue that Son fails to state a valid retaliation claim under the FLSA because the complaints she made prior to her termination were not made to any governmental authority but were instead informal complaints made internally to her employer.[49]  Son argues that the Supreme Court's decision in *Kasten v. Saint-Gobain Performance Plastics*[50] has eliminated this argument and abrogated existing Second Circuit law to the contrary.[51]

Son mischaracterizes the holding in *Kasten*.  There, the Supreme Court held that oral complaints to a government agency constitute protected activity under the FLSA, which courts had previously interpreted as applying only to written complaints made to a government agency.[52]  The Court specifically

---

[48]    Certified Translation at 5, Ex. A to Compl.

[49]    *See* Def. Mem. at 5.

[50]    131 S. Ct. 1325 (2011).

[51]    *See* Opp. Mem. at 3-4.

[52]    *See Kasten*, 131 S. Ct. at 1336.

refrained from deciding whether the FLSA protects either oral or written complaints made informally to an employer.[53]

As a result, the Second Circuit's rule holding that complaints to employers do not qualify as a protected activity controls – the FLSA applies only to "retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor."[54]  The only retaliatory treatment alleged by Son is her termination following her complaints to Kim and Youn.  Therefore, because Son's complaints were made informally to her employer and not to a government agency, she did not engage in protected activity under the FLSA and so cannot make out a prima facie retaliation claim.  For this reason, defendants' motion to dismiss the retaliation claim is granted.

## VI.   CONCLUSION

For the foregoing reasons, defendants' motion is granted as to plaintiff's claims for (i) discriminatory conduct in violation of section 1981, and

---

[53]    *See id.* (finding that resolution of the "Government/private employer question" was not a necessary predicate to resolution of the case at hand and stating "no view on the merits of Saint-Gobain's alternative claim").

[54]    *Lambert v. Genessee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993), *abrogated on other grounds by Kasten,* 131 S. Ct. at 1336; *Graves v. Deutsche Bank Secs. Inc.*, No. 07 Civ. 5471, 2010 WL 997178, at *4 (S.D.N.Y. Mar. 18, 2010) ("[T]he FLSA bars discrimination only when the retaliation is in response to a formal complaint lodged with the Department of Labor.").

(ii) retaliation in violation of the FLSA.  The Clerk of the Court is directed to close this motion (Docket No. 8).  A conference is scheduled for October 20, 2011 at 3 p.m.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 7, 2011

14

**-Appearances-**

**For Plaintiff:**

Scott A. Lucas, Esq.
Law Offices of Scott A. Lucas
250 Park Avenue, 20th Floor
New York, New York 10177
(212) 983-6000

**For Defendants:**

Bong June Kim, Esq.
Christine M. Bae, Esq.
Kim & Bae, P.C.
110 East 59th Street, 22nd Floor
New York, New York 10022
(212) 319-6888